FILED

2014 May-19  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA CAUDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 14-cv-00545-VEH |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA; CIGNA | ) | |
| CORPORATION; HONDA | ) | |
| MANUFACTURING HEALTH & | ) | |
| WELFARE BENEFITS PLAN, | ) | |
| PLAN NO. 501; HONDA RETIREMENT | ) | |
| PLAN, PLAN NO. 334; HONDA | ) | |
| MANUFACTURING OF ALABAMA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S CONSOLIDATED MEMORANDUM OF LAW
IN OPPOSITION TO CIGNA'S MOTION TO DISMISS ON
JURISDICTIONAL GROUNDS AND IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

---

Thomas O. Sinclair
M. Clayborn Williams
SINCLAIRWILLIAMS LLC
2100A Southbridge Parkway
Suite 336
Birmingham, AL 35209
T: 205.868.0818
F: 205.868.0894

**ATTORNEYS FOR PLAINTIFF**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................4

1. Under the Complaint, Personal Jurisdiction Over Cigna Arises Vicariously Through LINA Due To Its Day-to-Day Control over LINA's Operations .......................................................................................4

2. Limited Discovery Is Required Before the Court Properly Can Decide Cigna's Motion Relying on Matters Outside the Pleadings. ..........................8

   a. *Caudle's Allegations and the Attached Exhibits Establish a Qualified Right to Jurisdictional Discovery About Cigna's Direction and Control over the Administration of LTD Claims.* .......................................8

   b. *The Attached Discovery Requests Are Narrowly Tailored to Caudle's Jurisdictional Allegations.* ........................................................14

   c. *Neither Smith nor Spivey Should Control How the Court Decides Cigna's Motion Because the Posture and Presentation in this Action is Very Different Than in Those Two Actions.* ..............................15

3. Cigna's Motion Attacking the Merits of Caudle's Claims Ignores the Complaint's Specific Allegations that the Individuals Who Closed Caudle's Disability Claim Were Controlled in Their Day-to-Day Job Responsibilities by Cigna Corporation...........................................................17

   a. *Cigna's "Facial Attack" on the Complaint Fails Because Caudle Alleges Specific Grounds for Holding Cigna Liable as an ERISA "Fiduciary."* ...............................................................................18

   b. *Cigna's "Factual Attack," Which is Comparable to a Motion for Summary Judgment, Cannot Be Considered without Caudle First Having Been Afforded an Opportunity to Conduct Discovery* .................20

CONCLUSION....................................................................................................22

CERTIFICATE OF SERVICE ...........................................................................23

Plaintiff Vanessa Caudle ("Caudle") files this Consolidated Memorandum of Law in opposition to Cigna Corporation's Motion to Dismiss (Doc. 22) and in support of her motion for leave to conduct limited jurisdictional discovery filed this same date.  That motion is focused on the specific challenge Cigna raises in its motion.  Specifically Cigna's challenge is to Caudle's allegations that Cigna Corporation is an ERISA fiduciary for this Plan benefit because it controls the employees who decided her LTD claim.

For the reasons below, Caudle asks that she be permitted to conduct the limited jurisdictional discovery filed herewith as Exhibit 1, and that in connection with her requested leave, that the Court hold Cigna's Motion to Dismiss in abeyance until that discovery can be both completed and briefed.  Alternatively, Caudle asks that Cigna's Motion to Dismiss be denied in all respects at this time and that her case against Cigna arising out of its control over her LTD claim's decision-makers be allowed to proceed.

## **INTRODUCTION**

Caudle's claims against Cigna Corporation ("Cigna") and its subsidiary Life Insurance Company of North America ("LINA") arise out of several ERISA violations that culminated in the termination of, among other things, Caudle's

long-term disability ("LTD") benefits.[1]  As set forth in the Complaint (Doc. 1),

Cigna's liability as an ERISA fiduciary arises out of its control of and influence

over those employees who administered Caudle's claim under the LINA policy.

For Cigna, the factual question whether this control and influence occurred

lies at the heart of this case and particularly Cigna's motion.  This question

determines three things:  (1) Cigna's personal jurisdiction, where in such an

instance LINA's contacts in Alabama would be imputed to it; (2) CIGNA's subject

matter jurisdiction, which depends entirely on whether it is an ERISA fiduciary for

Caudle's claim; and (3) Cigna's liability, where the persons it controlled as its own

agents or employees committed the fiduciary breaches alleged in the Complaint.

As to LINA, this factual question has significance too.  In Step Two of the

*Williams* test[2], the Court will be tasked with deciding whether the claims decision

at issue was one made by an entity having an express grant of discretion.  LINA

claims there is, but only as to itself, not as to any other entity or company,

especially Cigna.  LINA's contention that it is entitled to the protections of

discretionary authority (which if correct impacts not only the Court's standard of

review, but also the Court's "record" according to some authorities) depends on,

---

[1] Caudle's ancillary benefits with Honda through the two ERISA Plans at issue are not relevant to the issues in Cigna's motion and, therefore, are not set forth here.

[2] *Williams v. BellSouth Telecom., Inc.* 373 F.3d 1132 (11th Cir. 2004) sets forth a six-step framework for deciding ERISA benefits cases.  The test has since been modified by *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) as to the final steps involving conflict (which are not presently relevant to the instant motions or discussions).

among other things, there being proof that LINA actually controlled the persons who made the claims decision. *Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1100 (M.D. Ala. 2006). If discovery (whether as to LINA or as to Cigna) shows that LINA did <u>not</u> control the decision but that instead the decision was controlled by Cigna, then just like in *Anderson* where the parent similarly controlled the actual claims decision, the case must be decided under a *de novo* review standard. *Id.* Accordingly, there is no escaping this issue or its need for discovery.

That being the case, Cigna's role as a defendant is important, not just from a liability standpoint but also a case-administration one. Cigna is the ultimate custodian of many documents necessary to for the Court to have a full record on not just *Williams* Step Two questions relating to discretion, but also Step 4, 5 and 6 questions pertaining to conflict. Given the overlap occurring with Cigna's motion and the majority of the substantive merits-related questions the Court must ultimately answer, the Court must defer ruling on Cigna's contention that it is not a proper defendant until after limited jurisdictional discovery has been completed.[3]

For the Court's consideration and review in defining the scope of discovery to permit, Caudle's proposed jurisdictional discovery requests on the question of

---

[3] Arguably, the Court should even wait for the completion of *full* discovery before resolving the motion given its heightened intertwinement with the actual merits of the case not only as to Cigna but also as to LINA.

"agency" jurisdiction are attached.  As set forth in her motion, Caudle has attempted to discuss these both the scope and formulation of these requests with Cigna, but its counsel has answered that Cigna's opposition to <u>any</u> discovery is unconditional and all-encompassing.

## **ARGUMENT**

**1.     Under the Complaint, Personal Jurisdiction Over Cigna Arises Vicariously Through LINA Due To Its Day-to-Day Control over LINA's Operations.**

In its motion, Cigna denies the existence of personal jurisdiction by asserting simply that it has no direct contacts with Alabama, claiming that it is not an "insurance company" and it does not itself engage in insurance related activities in this state.  The primary problem with Cigna's denial is that it actually does not address in any way the bases for jurisdiction set forth in Caudle's Complaint – agency, conspiracy and alter ego.  To be clear, Caudle does not deny that Cigna is not an "insurance company."  Caudle also does not contend that Cigna issued the policy at issue.  Rather, Caudle's contention is that Cigna <u>vicariously</u> does business in Alabama using subsidiaries like LINA as proxies.  This results in personal jurisdiction pursuant under Alabama law.

Ignoring this jurisdictional basis, Cigna Corporation simplistically suggests in its filings that the only way for it to be subject to personal jurisdiction is if it were to be found to transact business in Alabama in its own name.  This incorrect

and simplistic proposition, however, is not the law at all.  Although the parent-subsidiary relationship <u>alone</u> cannot confer personal jurisdiction over a foreign parent corporation in the forum where a subsidiary acts, a parent's exertion of operational of control over a subsidiary presents an entirely different situation. Specifically, "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction…, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction."  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002).

Alabama courts look to *Ex parte Baker*, 432 So. 2d 1281 (Ala. 1983) for determining whether a parent sufficiently controls a subsidiary such that it is deemed by law to be "present" in the locale solely through the subsidiary's conduct of business there.  In *Baker*, the Alabama supreme court examined whether the parent exercised "general management and control over the affairs" of its subsidiary,[4] which is consistent with the same line of reasoning followed in other jurisdictions.  *See, e.g., Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143 (Fla. Dist. Ct. App. 2007)(jurisdiction over a parent corporation exists where "the parent

---

[4] Although the *Baker* analysis originally occurred in the context of a state law venue issue, Alabama courts apply it to determine the existence of personal jurisdiction under an agency theory.  *See Thompson v. Taracorp., Inc.*, 684 So. 2d 152, 158 (Ala. Civ. App. 1996).

corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs").

For agency jurisdiction to accrue, there need not be a formal "principle-agent" relationship.  Instead, the question is one of fact involving consideration of whether the parent company has done business through the subsidiary, such that the subsidiary is essentially an operational "division" that passes all its profits to the parent instead of keeping profits for itself.

*Ex parte Charter Retreat Hosp.*, *Inc.*, 538 So. 2d 787 (Ala. 1989) is instructive.  In that case which was decided pursuant to *Baker*, the Alabama Supreme Court found that testimony showing the subsidiary's direction of profits to the foreign parent indicated that the parent, which otherwise did not have any presence of its own in that forum, was nevertheless doing business there by agent, and thus was a proper defendant there.  537 So. 2d at 791-92.  The court found that this passage of profits up the chain was very clearly how the parent company "makes its money; this is its business."  This equated to the foreign parent doing business in that forum, with the subsidiary being the "means" by which that business was conducted.  *Id.* at 792.

While the passage of profits (and also the passage of liabilities and losses) is a strong indicator by itself that a parent is doing business through its subsidiary, facts involving control over how the subsidiary conducts its day-to-day operations

6

have heightened relevance too.  *Nixon v. Celotex Corp., et al*, 693 F. Supp. 547 (W.D. Mich 1988) is instructive.  In that case, the district court held that the plaintiff, who asserted various employment-related claims, presented substantial evidence for the court to exercise personal jurisdiction over a corporation for the acts of a subsidiary.  This evidence included materials showing (1) that two of Celotex's managers were employees of JWC; (2) that JWC developed and set Celotex's personnel manual and employment policies; and (3) that Celotex's employee salary and pension benefits were paid with checks drawn on JWC accounts.  *Nixon*, 693 F. Supp. at 550.  The Court held that "Celotex's contacts with [the forum state] may fairly be attributed to JWC for purposes of an action arising out of the employment relationship and relating to employment and personnel decisions made jointly by JWC and Celotex."[5]  *Id.*

Facts such as LINA's passage of profits to Cigna (and Cigna's concomitant reliance on the same to meet its cash-flow needs, as discussed in Part 2) and Cigna's control over persons working with – but not necessarily "for" – LINA are ones this Court must ascertain when deciding Cigna's motion.  The Court will not be able to make an informed adjudication of Cigna's jurisdiction without discovery relevant to these facts.  For reasons set forth more fully in the following section,

---

[5] The *Nixon* court further held that jurisdiction may fairly extend to a parent corporation <u>even in the absence of agency or alter ego situations.</u>  On this point, the Court noted that "[t]here may be some situations where a subsidiary could not be considered an agent or alter ego under corporate law, but it would nonetheless be fair to subject the parent to jurisdiction for some [of] its subsidiary's activities."  *Nixon*, 693 F. Supp. at 551.

Caudle asks that her motion for limited jurisdictional discovery be granted and that Cigna's motion to dismiss be denied.

**2.    Limited Discovery Is Required Before the Court Properly Can Decide Cigna's Motion Relying on Matters Outside the Pleadings.**

A plaintiff "must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction." *Eaton v. Dorchester Dev. Inc.*, 692 F.2d 727, 732 (11th Cir. 1982).   Courts in this Circuit have thus characterized jurisdictional discovery as a "qualified right." *See, e.g., Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1145 (S.D. Fla. 2007).  This "qualified right" must be enforced here, especially given the nature of the requests proposed in Exhibit 1.

   *a.    Caudle's Allegations and the Attached Exhibits Establish a Qualified Right to Jurisdictional Discovery About Cigna's Direction and Control over the Administration of LTD Claims.*

A "qualified right" to jurisdictional discovery applies where "factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity.'" *Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (11th Cir. 2009)(quoting *Mellon Bank (East) PSFS, Nat's Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  If it were otherwise, the Court would allow a defendant to defeat jurisdiction on the strength of a self-serving affidavit "while

withholding information on its contacts to the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996).

The allegations in Caudle's Complaint about Cigna Corporation's control over the day-to-day operations of its subsidiaries like LINA are very specific.  This specificity arises from Plaintiff's Counsel having viewed documents produced in other actions involving Cigna's compensation structure.  Those documents, however, are presently subject to a confidentiality order that does not have any sort of sharing provision between cases, meaning that Plaintiff's Counsel cannot file them for the Court's consideration here without Cigna's express permission. Plaintiff's Counsel requested that permission before filing this Response, but Cigna has declined to grant it.  *See* Exhibit 2, Plaintiff Counsel's May 16, 2014 facsimile to Cigna Counsel, and Exhibit 3, Plaintiff Counsel's May 19, 2014 facsimile to Cigna Counsel.

Without being able to show the Court these documents, Plaintiff's Counsel may only refer the Court to the Complaint's allegations setting forth that the claims personnel who control the administration LTD claims under policies issued by LINA receive Cigna Corporation stock as part of their compensation.  Doc. 1, Compl. at ¶ 39.  The significance of this issuance comes from the fact that Cigna's stock is issuance-restricted as that term is defined under relevant securities regulations and the rules of the New York Stock Exchange.  *Id.* at ¶ 37.

Accordingly, Cigna stock ordinarily cannot be given away to non-Cigna employees except under very limited and reportable circumstances. *Id.* at ¶ 38. That these claims-administration employees receive Cigna Corporation stock, then, is a clear indication that they are Cigna's employees-in-fact.

The Complaint's other allegations are just as specific. Also relevant to jurisdiction is the fact that Cigna and LINA share members with each other for their respective Boards, *id.* ¶ 43, and the fact that the subsidiary is a wholly-owned corporation, *id.* at ¶ 44. This wholly-owned status gives important context to the similarly revealing fact that LINA directs all its profits to Cigna, which then accepts those profits as its own. These profits are what Cigna's directors use to drive this "holding company's" stock value, since it is a holding company having the distinction also being a publically traded corporation listed on the New York Stock Exchange. Doc. 11, Cigna Corp.'s Disclosure Statement at 1. In fact, Cigna discloses this fact (as it must) in its financial reports filed with the Securities and Exchange Commission. In that report, it states that it relies on "dividends" from its wholly owned subsidiaries to meet its cash flow needs.[6] Exhibit 4, p. 66.

---

[6] Accordingly, Cigna is nothing, and has no value whatsoever, without absorption of the profits of its operational "subsidiaries" like LINA, which in actuality are nothing more than "operations" departments of the parent which otherwise would have no means of generating any income for its shareholders on its own. Thus, Cigna's control over the operations of LINA for its group disability business is essential to its success and in maintaining or generating shareholder value.

But for an entity holding itself out for litigation purposes as merely a "holding company" whose only function is to collect dividend income, Cigna employs an unusually large number of people to accomplish this narrow purpose. Twelve years ago, the U.S. District Court for New Jersey, in a class action against Cigna Corporation brought by Cigna's own employees, those employees sought class certification.  In ruling on that motion, the Court found the numerosity requirement to be met by a class size that it found included **at least 25,000**. *See Amara v. Cigna Corp.*, 2002 U.S. Dist. LEXIS 25947, *7 (D.N.J. Dec. 20, 2002)(a copy of which is attached as <u>Exhibit 5</u>).

A 25,000 member-strong workforce (which likely has grown since 2002) far exceeds that which is necessary to collect and count subsidiary dividend money, especially in this automated age.  When considering Caudle's allegations above that Cigna is able to and does in fact issue its corporate stock to claims administration personnel, a powerful inference arises that this 25,000-plus strong Cigna Corporation workforce includes these same persons.  That being the case, jurisdiction over Cigna Corporation indisputably exists by virtue of these persons serving as ERISA fiduciaries on Cigna's behalf.  The Complaint also describes "general service agreements" involving Cigna Corporation and LINA governing not only the exercise of authority over insurance claims where the subsidiary is the nominal "contracting party," but also the indemnification of one another for certain

11

financial responsibilities.  Doc. 1, Compl. at ¶¶ 47-48.  Accordingly, LINA

operates as Cigna's insurance "store front."

      Cigna's Accounting Director, Mr. Barlow, importantly does not contradict

any of these facts or allegations in his declaration.  Rather, his declaration is deftly

drafted to avoid challenging these matters.  For example, although he says Cigna

"does not enter into any agency contracts," he says so only with respect to

contracts where third parties are hired to be agents for Cigna.  Doc. 22-2, Barlow

Decl. at ¶ 3.  This is not at all what Caudle has alleged – not even close.  The

"agency" Caudle alleges is not one of express agreement nor is it one involving the

hiring of third parties.  Instead, Caudle alleges agency established by facts of actual

operational control over how LTD claims are decided.

      Mr. Barlow's statement that Cigna "is not an insurance company and does

not offer insurance products or insurance services to the public" likewise is a mis-

direction.  Cigna here implicitly suggests LINA is the only entity offering

"insurance products or insurance services."  Doc. 22-2, Barlow Decl. at ¶ 3.  But

this is not inconsistent at all with the arrangement Caudle alleges here.  Caudle

alleges that Cigna's employees are let out to LINA, such that they remain Cigna

employees, and thus operate under Cigna's direct control, while at the same time they provide insurance services on LINA's behalf.[7]

These allegations, especially when combined with the attached exhibits, demonstrate Caudle's qualified right to pursue jurisdictional discovery so that she may fully and fairly respond to Cigna's motion.  "Federal courts have generally authorized jurisdictional discovery antecedent to resolving Rule 12(b)(2) motions to dismiss for want of personal jurisdiction."  *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1227 (S.D. Ala. 2006)(citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) and *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999))(parenthetical explanations omitted).  For the Court to make an informed decision on Cigna's motion based on a full record, discovery must be permitted.  Alternatively, Cigna's motion should be denied outright and the case against it arising out of its actual control over the administration of Caudle's benefits should be allowed to proceed.

---

[7] Barlow's other descriptions in his Declaration, such as those at ¶¶ 6-8, are not inconsistent with this being the case either.  The specific basis for jurisdiction is that Cigna controls and directs those individuals working on behalf of <u>LINA</u> to administer claims.  LINA is, therefore, nominally liable as the insurance company that provided the services, but Cigna Corporation <u>also</u> is liable because of the degree of control it had over those individuals "working for LINA."  Cigna's control comes from, among other things, its position as being the entity that as established above is responsible for these employees' compensation.

b.     *The Attached Discovery Requests Are Narrowly Tailored to Caudle's Jurisdictional Allegations.*

The allegations and facts before the Court (and recounted above) give a clear path when it comes to jurisdictional discovery in this matter, and Caudle's requests adhere to that path.  Each request goes towards the relationship between Cigna and LINA at the operational level. Information requested includes, without limitation,

1)     Organizational charts showing how Cigna, LINA and their various corporate divisions (to the extent there are such) relate to one another and what it is exactly that 25,000-plus Cigna employees do;

2)     Documents showing which corporate entity is the source of each claims decision-maker's compensation, such as W-2s, payroll records, and bonus information (all of which Caudle proposes in her request to be subject to redaction for personal information whose disclosure is unnecessary); and

3)     The documents referenced above that were produced in *Melech* but which Cigna has refused to produce in this action to Caudle's instant prejudice in connection with Cigna's present motion.

The total number of requests proposed includes just three interrogatories and seven requests for production (one of which has three subparts).  Thus, the discovery sought could not be more limited or discrete to the question presented.

As indicated above, the ultimate question Cigna's motion requires the Court to decide is whether Cigna exercised general management and control over the affairs of LINA such that LINA's contacts with Alabama must be imputed to Cigna.  This discovery is narrowly tailored to investigate that question to the extent

14

any uncertainties remain in Caudle's specific allegations and in her exhibits filed with the Court.

> c.    *Neither* <u>Smith</u> *nor* <u>Spivey</u> *Should Control How the Court Decides Cigna's Motion Because the Posture and Presentation in this Action is Very Different Than in Those Two Actions.*

Unlike questions of "general" personal jurisdiction where the issue is whether there are continuous or systematic contacts, "specific" jurisdiction – which is the form alleged here – is a question that must be asked from case to case. Specific jurisdiction arising from "agency" involves a fact-specific inquiry for each case. In other words, control exercised in one case may not have been exercised in another. (Then again, it could be a systemic issue depending on the evidence developed.) The question ultimately is whether the direction and control of the parent company over the subsidiary in the incident at issue gives rise to "specific" jurisdictional contacts to be imputed through the subsidiary to the parent.

For this very reason, Cigna's string-cite to other courts that have dismissed Cigna Corporation from various actions have no governance here. This is especially the case where in these prior cases the plaintiffs did not have the same base of knowledge that Caudle, through her counsel, has here through the *Melech* production, even though Cigna will not permit the filing of that production (under

seal) into this case.  Nor do these other cases involve the same targeted discovery requests.[8]

Two cases, however, merit special attention here, especially since one – *Dorothy Smith v. Life Ins. Co. of N. Am.*, Case No.: 1:13-cv-2046-VEH – was decided by this same Court between these same lawyers.  As the Court will recall, in *Smith*, the plaintiff did not submit a prior advance draft of discovery to Cigna nor did she file a motion for jurisdictional discovery.  Instead, she requested that the Court adopt the same disposition reached in *Spivey,* an earlier case where Judge Albritton, in dismissing Cigna, expressed to Counsel his satisfaction with LINA's pledge not to sequester Cigna documents and information from production based on custody-and-control objections.  This Court, not having the benefit of the same level of briefing, oral argument or in-chambers discussion as that which occurred before Judge Albritton, declined to adopt the same understanding.

In this action, therefore, Caudle deems it necessary to litigate this issue just like Mr. Spivey did in his action.  But that is not to say the present posture is the same as that in *Spive*y where the result nevertheless was Cigna's dismissal.  Unlike in *Spivey*, Caudle presents not only more specific allegations, but certain evidence, which Judge Albritton did not have before him in that case.  Moreover, Caudle's request for jurisdictional discovery is not through a motion to reconsider, which is

---

[8] The discovery requests filed with this Motion and Memorandum, in fact, are not even the same as those proposed in *Spivey*.  There are material differences in the requests here and in that case.

subject to its own strict standards, but instead in the original briefing before the question of jurisdiction has been taken under submission. Consistent with procedural rules governing motions to reconsider, Judge Albritton denied jurisdictional discovery after finding it did not warrant re-visitation of his original ruling for Cigna.

In this action, Caudle's jurisdictional motion is both timely and properly presented. Caudle asks that it be considered on its own merits, because this discovery has been prepared in a way that is narrowly tailored to the questions at hand for this particular case.

**3.    Cigna's Motion Attacking the Merits of Caudle's Claims Ignores the Complaint's Specific Allegations that the Individuals Who Closed Caudle's Disability Claim Were Controlled in Their Day-to-Day Job Responsibilities by Cigna Corporation.**

Cigna's motion tellingly blends its argument that it is not a "proper party" under Rule 12(b)(1) with its argument that the Complaint fails to state a claim against it under Rule 12(b)(6). This is because the arguments are one and the same; in both instances, Cigna argues that because it is not an "insurance company" and did not issue the policy in question, it is not liable to Caudle on either her benefits claim or breach of fiduciary duty claim. *Compare* Cigna's Motion at p. 6, ¶ 7 *with* pp. 6-7, ¶ 8. By invoking Rule 12(b)(6) at the same time while referring to an affidavit from beyond the pleadings, Cigna's challenge to

subject matter jurisdiction raises both a "facial" attack and a "factual" attack at the same time.  Caudle, therefore, addresses both modes of attack.

> a.    *Cigna's "Facial Attack" on the Complaint Fails Because Caudle Alleges Specific Grounds for Holding Cigna Liable as an ERISA "Fiduciary."*

The first ground tests only the sufficiency of the Complaint just as if Cigna's motion cited only Rule 12(b)(6).  "'Facial attacks' on the complaint 'require[] the court merely look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion.'"  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  "On a facial attack, a plaintiff is afforded the safeguards similar to those provided in opposing a Rule 12(b)(6) motion."  *Id.*

Cigna's status as a proper party begins with its ERISA fiduciary status.  In relevant part, ERISA provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises discretionary authority or discretionary control respecting then management of such plan or exercises any authority or control respecting management or disposition of its assets….

29 U.S.C. § 1002(21)(A).  The term "person" is defined broadly to include a corporation such as Cigna.  *Id.* § 1002(9).  This statute "imposes fiduciary duties not only on those entities or companies that exercise *discretionary* control over the disposition of plan assets, but also imposes such duties on entities or companies

that exercise '*any* authority or control' over the covered assets." *Briscoe v. Fine*,

444 F.3d 478, 490-91 (6th Cir. 2006).

The Complaint's allegations of Cigna's control over the employees who

administered Caudle's claim support the conclusion that Cigna is an ERISA

fiduciary.  These allegations begin with paragraph 24 alleging that Cigna, as well

as LINA, "exercise[d] authority or control respecting the management or

disposition of Plan assets or the personnel exercising said authority over The Plan

assets."  Doc. 1, Compl. at ¶ 24.  The Complaint then describes this relationship

giving rise to Cigna's "authority or control" over the administration of claims

through LINA with specificity.  *Id.* ¶¶ 25-49.  In doing so, the Complaint, the

allegations of which must be taken as true, establish that "[e]ach of LINA's

employees was acting as an individual or as the agent and employee of Cigna

Corporation within the course and scope of said agency and with permission and

consent of the principal."  *Id.* at ¶ 49.

The pleadings then move toward the breach of ERISA itself through both the

denial of the claim and the fiduciary breaches that occurred along the way.  Given

that LINA does not dispute the sufficiency of those particular allegations (at least

with respect to Caudle's claim for relief under 29 U.S.C. § 1132(a)(1)(B)), Caudle

here presumes that Cigna's motion, which makes no mention of this part of the

Complaint, does not challenge these either.  Therefore, because the allegations in

the Complaint plead *prima facie* that Cigna is an ERISA fiduciary in this instance, Cigna's "facial" challenge to subject matter jurisdiction fails.

> b.    *Cigna's "Factual Attack," Which is Comparable to a Motion for Summary Judgment, Cannot Be Considered without Caudle First Having Been Afforded an Opportunity to Conduct Discovery.*

Cigna cites also to Rule 12(b)(6), at the same time it relies on an affidavit. This gives rise to a "factual attack," which is treated exactly like a summary judgment motion under Rule 56.

As opposed to "facial attacks" discussed above, "'[f]actual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* This is a true attack on the "trial court's jurisdiction – its very power to hear the case." *Id.* "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts with not preclude the trial court from evaluating the merits of the jurisdictional claims." *Id.*

As Caudle explains above in the Introduction section of this Memorandum, Cigna's attack on subject matter jurisdiction (and to some extent its attack on personal jurisdiction[9]) almost entirely overlaps with one of the key issues the Court must decide when it addresses the merits of this action.  This gives powerful cause

---

[9] *See Amerifactors Fin. Group LLC v. Enbridge, Inc.*, 2013 U.S. Dist. LEXIS 159629, *12-*13 (M.D. Fla. Nov. 7, 2013).

for discovery to occur before the Court rules on Cigna's motion. When a defendant's jurisdictional attack implicates the underlying merits of the plaintiff's claim, "'[t]he proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). "Where the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" *Eaton*, 692 F.2d at 733.

When this is the case, the Fourth, Fifth and Seventh Circuits suggest that the district court's wisest course of action in most instances may be to permit the case to proceed to general discovery and possibly even trial before ruling on jurisdiction. *See Combs v. Bakker*, 886 F.2d 673, 676 4th Cir. 1989); *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1983); and *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir. 1995). Denial of discovery when facts are genuinely in dispute "is an abuse of discretion." *Eaton*, 692 F.2d at 729-30. Cigna's categorical opposition to Caudle's request for discovery is an invitation for just this sort of error. For this additional reason, to the extent the Court finds it proper to entertain Cigna's "factual" attack on jurisdiction, Caudle submits first that her

motion for jurisdictional discovery should be granted.  Alternatively, Cigna's

motion to dismiss should be denied outright.

## CONCLUSION

For the foregoing reasons, Caudle asks that she be permitted to conduct the

limited jurisdictional discovery filed herewith, and that in connection with her

requested leave, that the Court hold Cigna's motion to dismiss in abeyance until

that discovery can be both completed and briefed.

Alternatively, Caudle asks that Cigna's motion to dismiss be denied in all

respects at this time and that her case against Cigna arising out of its control over

her LTD claim's decision-makers be allowed to proceed.

Respectfully submitted,

/s/  *M. Clayborn Williams*
Thomas O. Sinclair
M. Clayborn Williams
SINCLAIRWILLIAMS LLC
2100A Southbridge Parkway
Suite 336
Birmingham, AL 35209
T:  205.868.0818
F:  205.868.0894
E:  tos@sinclairwilliams.com
     mcw@sinclairwilliams.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via the Court's ECF system on May 19, 2014:

William B. Wahlheim, Jr.
wwahlheim@maynardcooper.com

Grace Robinson Murphy
gmurphy@maynardcooper.com

Katherine L. Soppet
ksoppet@maynardcooper.com

Stephen J. Bumgarner
sbumgarn@burr.com

/s/  *M. Clayborn Williams*
Of Counsel