FILED

2014 Jun-27  PM 01:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA CAUDLE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 1:14-CV-545-VEH** |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.   Introduction

This lawsuit arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 1 at 1). Plaintiff Vanessa Caudle ("Ms. Caudle") filed her complaint on March 25, 2014. (Doc. 1). The defendants named in Ms. Caudle's lawsuit are Life Insurance Company of North America ("LINA"); Cigna Corporation ("Cigna"); Honda Manufacturing Health & Welfare Benefits Plan No. 501("Honda Health Plan"); Honda Retirement Plan, Plan No. 334 ("Honda Retirement Plan"); and Honda Manufacturing of Alabama, LLC ("Honda"). (*Id.* at 1; *id.* at 2 ¶ 1; *id.* at 4-11 ¶¶ 13-60); (*see also* Docs. 7, 8, 9 (copies of executed summonses)).

Pending before the court are six motions:  (1) Honda's Motion To Dismiss

(Doc. 14) ("Honda's Motion") filed on April 18, 2014; (2) Honda Health Plan's Motion To Dismiss (Doc. 16) ("Honda Health Plan's Motion") filed on April 21, 2014; (3) Honda Retirement Plan's Motion To Dismiss (Doc. 17) ("Honda Retirement Plan's Motion") filed on April 22, 2014; (4) LINA's Motion To Dismiss Count II of Plaintiff's Complaint (Doc. 20) ("LINA's Partial Motion") filed on May 5, 2014;[1] (5) Cigna's Motion To Dismiss (Doc. 22) ("Cigna's Motion") filed on May 5, 2014; and (6) Ms. Caudle's Motion for Leave To Conduct Limited Jurisdictional Discovery (Doc. 26) (the "Discovery Motion") filed on May 19, 2014.

The parties have briefed these motions (Docs. 18, 23, 24, 25, 27, 28, 31, 32, 33), and they are ready for disposition. For the reasons explained below, they are all **GRANTED** except for Cigna's Motion, which is **GRANTED IN PART** and **DENIED IN PART**, and Ms. Caudle's Discovery Motion, which is **TERMED** as **MOOT**.

---

[1] Because LINA has answered Ms. Caudle's lawsuit (Doc. 21), its Partial Motion is really one for judgment for the pleadings pursuant to Rule 12(c) as opposed to Rule 12(b)(6). Rule 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). However, "[w]hether the court examine[s] [a pleading] under Rule 12(b)(6) or Rule 12(c), the question [remains] the same: whether the [complaint] stated a claim for relief." *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 n.2 (11th Cir. 2011) (emphasis added) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)); *see also Sampson*, 453 F. App'x at 865 n.2 (applying *Strategic Income* and concluding that court's error in granting a dismissal under Rule 12(c) instead of Rule 12(b)(6) was harmless).

## II.     Standards

### A.     Rule 12(b)(2)

Because subject matter jurisdiction in this case is based upon federal question, a different personal jurisdiction constitutional standard applies than the one set forth in *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), which test arises under the Fourteenth Amendment and is applicable only in diversity cases. "[W]hen, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the <u>Fifth</u>, rather than the <u>Fourteenth</u>, Amendment." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (emphasis added) (citing *In re Chase & Sanborn*, 835 F.2d 1341, 1344 (11th Cir. 1988), *rev'd on other grounds sub. nom*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989)); *see also BCCI*, 119 F.3d at 946 ("As we noted in *Chase & Sanborn*, '[t]he due process concerns of the fifth and fourteenth amendments are not precisely parallel.'").

Under the Rule 12(b)(2) framework applicable to federal question cases when the subject federal statute provides for nationwide service of process:[2]

---

[2] ERISA's service of process provision states that "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). This broadly worded language is appropriately classified as a nationwide service of process provision. *Cf. Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("Panama alleged that the district court had jurisdiction over the First American defendants under RICO's nationwide service of process provision, 18 U.S.C. § 1965(d), which provides that process may be served 'on

[A] defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis. "As a practical matter ... state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line." Wright & Miller, *supra*, § 1067.1, at 327. Thus, determining whether litigation imposes an undue burden on a litigant cannot be determined by evaluating only a defendant's contacts with the forum state. <u>A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis.</u> *See   United States Securities and Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1543-44 (11th Cir. 1997).

A defendant's "minimum contacts" with the United States do not, however, automatically satisfy the due process requirements of the Fifth Amendment. There are circumstances, <u>although rare</u>, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum.

*BCCI*, 119 F.3d. at 946-47 (footnotes omitted) (emphasis added).

However, the Eleventh Circuit has "emphasize[d] that it is only in <u>highly unusual cases</u> that inconvenience will rise to a level of constitutional concern." *Id.* at 947 (emphasis added). Additionally, "[<u>t]he burden is on the defendant</u> to demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult

---

any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.'"); *cf. also Willingway Hospital, Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1109 (S.D. Ga. 1994) (explaining that "[t]his, of course, is how the typical national service of process provision works" when analyzing ERISA's service of process provision"). Further, "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *BCCI*, 119 F.3d at 942.

and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* (some internal quotation marks omitted) (emphasis added) (second alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 1274, 2185, 85 L. Ed. 2d 528 (1985)).

In those unusual instances in which "a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *BCCI*, 119 F.3d at 948. "In evaluating the federal interest, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy." *Id.* "Where, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." *Id.*

## B.    Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of

Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal

6

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.   Analysis

### A.   Honda's Motion

Ms. Caudle's complaint contains four counts. Count I is brought against all defendants and is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). (Doc. 1 at 21-23 ¶¶ 105-116). Count II is for breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1105, and is brought against all defendants under 29 U.S.C. § 1132(a)(3). (Doc. 1 at 23-25 ¶¶ 117-127). Count III is for failure to provide documents under 29 U.S.C. §

1132(c), and is brought only against Cigna. (Doc. 1 at 25-27 ¶¶ 128-136). Finally, Count IV is for the failure to provide documents under 29 U.S.C. § 1132(c), and is brought only against the Honda entities and plans. (Doc. 1 at 28-30 ¶¶ 137-142).

Honda asserts that it is due to be dismissed from this action because it is not a properly named defendant. More specifically, Honda points out that nowhere within Counts I, III, and IV does Ms. Caudle make any allegations about any wrongdoing on the part of Honda, much less plausibly explain how Honda is potentially liable to her under ERISA for these claims. As for Count II, Honda maintains that a breach of fiduciary claim is foreclosed by virtue of United States Supreme Court authority and the circumstances presented here.

Ms. Caudle contests the dismissal of Counts I, II, and IV against Honda[3] as part of her consolidated response to Honda's Motion, Honda Health's Motion, and Honda Retirement's Motion. The court has studied her opposition and her pleading and concludes that Ms. Caudle has not alleged any plausible claim against Honda.

### 1. Counts I and IV

More specifically, Counts I and IV are entirely silent about Honda's specific actions or inactions and, as a result, neither one constitutes a validly stated claim against it. As it pertains to Count IV, Ms. Caudle's simply lumping all the Honda

---

[3] Thus, Ms. Caudle concedes that Count III is not applicable to Honda.

Defendants together as "Honda entities" in an unacceptable shotgun format does not satisfy her Rule 8 obligation to assert her ERISA-based counts against each defendant in a plausible manner. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.").[4] Instead, Ms. Caudle must assert her failure to produce documents claim against each Honda-related defendant in a non-collective fashion, but only to the extent that a written request for documents was sent

---

[4] *Davis* footnote 54 gives numerous examples of Eleventh Circuit anti-shotgun references and states in full:

> *See, e.g., United States ex el. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); *Ambrosia Coal and Constr. Co. v. Morales*, 368 F.3d 1320, 1330 n.22 (11th Cir. 2004); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 nn.9-10 (11th Cir. 2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1128–34 (11th Cir. 2001); *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326-27 n.6 (11th Cir. 1998); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *Ibrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162 *passim* (11th Cir. 1997); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1567 (11th Cir. 1995); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1483-84 (11th Cir. 1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543-44 n.14 (11th Cir. 1986) (Tjoflat, J., dissenting). This list is just a teaser—since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

*Davis*, 516 F.3d at 979 n.54.

to a Honda defendant that was also a plan administrator as required by ERISA.[5]

### 2.   Count III

In seeking dismissal of Count III, Honda relies primarily upon the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996), and its progeny. (*See* Doc. 14 at 5-10 (explaining that because Ms. Caudle is seeking an individualized claim for ERISA benefits under § 502(a)(1)(B) in Count I, a claim for breach of fiduciary duty relating to those same benefits under § 502(a)(3) in Count II is not available to her); *see also Hammond, et al. v. Reynolds Metals Co., et al.*, No. 3:01-CV-0811-VEH, (Doc. 147 at 6-13) (N.D. Ala. Jan. 26, 2006) (dismissing ERISA breach of fiduciary claims consistent with *Varity*'s establishment of the proper scope of equitable relief afforded under § 1132(a)(3)); *Smith v. Life Ins. Co. of N. Am., et al.*, No. 1:13-CV-2047-VEH, (Doc. 42 at 10-11) (N.D. Ala. Mar. 31, 2014) (same)).

In opposition, Ms. Caudle contends that her Count II is not duplicative of Count I in the *Varity* sense. For example, Ms. Caudle counters that, as part of her relief, she seeks equitable remedies for Defendants' breaches of fiduciary duty under § 1132(a)(3) "which § 1332(a)(1)(B) cannot offer . . . ." (Doc. 18 at 13).[6] Ms. Caudle

---

[5]   *See* discussion *infra*, at 14-15.

[6]   All page references to Doc. 18 correspond with the court's CM/ECF numbering system.

relies upon *Cigna Corp v. Amara*, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011) to support her position. *See id.* at 1871 ("We conclude that [§ 502(a)(1)(B)] does not authorize this relief. Nonetheless, we find that a different equity-related ERISA provision, to which the District Court also referred, authorizes forms of relief similar to those that the court entered. § 502(a)(3), 29 U.S.C. § 1132(a)(3).").

Honda replies that *Amara* is dissimilarly postured because that authority is an ERISA disclosure/plan reformation-driven decision and not a benefits-driven one. *See Amara*, 131 S. Ct. at 1870-71 (summarizing that "[t]he District Court agreed that the disclosures made by CIGNA [sued in its capacity as an employer] violated its obligations under ERISA" and that it "reformed the new plan and ordered CIGNA to pay benefits accordingly"). Further, in studying the particular allegations of Count II, the court agrees with Honda that Ms. Caudle's breach of fiduciary count has not been plausibly pled.

Ms. Caudle does not seek to reform either the Honda Health Plan or Honda Retirement Plan. Rather, she complains that Defendants breached their fiduciary duties by failing to personally inform her about additional plan benefits that were available to her and to enforce those plans as written. (*See* Doc. 1 at 23-25 ¶¶ 117-127 (seeking no modification of terms for either the Honda Health Plan or the Honda Retirement Plan); *cf. Amara*, 131 S. Ct. at 1878 ("We also conclude that the District

Court could not find authority in [§ 502(a)(1)(B)] <u>to reform</u> CIGNA's plan as written.") (emphasis added); *cf. also Amara*, 131 S. Ct. at 1879 ("<u>The power to reform</u> <u>contracts</u> (as contrasted with the power to enforce contracts as written) <u>is a traditional</u> <u>power of an equity court</u>, not a court of law, and was used to prevent fraud." (emphasis added) (citing *Baltzer v. Raleigh & Augusta R. Co.*, 115 U.S. 634, 645, 6 S. Ct. 216, 29 L. Ed. 505 (1885))).

Additionally, Ms. Caudle expressly alleges at the end of Count II that:

> As a direct and proximate result of Defendants' failure to carry out their duties as fiduciaries of the various plans pursuant to 29 U.S.C. § 1104, <u>Plaintiff has been damaged in an amount equal to the amount of</u> <u>the benefits to which Plaintiff would have been entitled under the</u> <u>various plans</u>, and in the amount equal to future benefits payable while Plaintiff remains disabled under the terms of the various plans, as well as additional damages to be proven at the trial of this matter.

(Doc. 1 at 25 ¶ 127 (emphasis added)).

The heart of Count II is about obtaining individualized plan benefits which Ms. Caudle maintains that Defendants have wrongfully withheld from her. Further, the court does not see where Count II encompasses any type of a request for equitable relief, much less a remedy of plan reformation. Thus, *Amara* is inapplicable, and Ms. Caudle has not plausibly pled a breach of fiduciary claim against Honda that can survive *Varity* scrutiny. Therefore, Honda's Motion is **GRANTED**, and all counts asserted against it by Ms. Caudle are **HEREBY DISMISSED WITHOUT**

**PREJUDICE**.

###### B.      Honda Health Plan's Motion

Honda Health Plan's Motion similarly identifies Counts I, II, and IV as ones which Ms. Caudle is pursuing against Honda Health Plan. Ms. Caudle contests the dismissal of Counts I, II, and IV against Honda Health Plan[7] as part of her consolidated response to Honda's Motion, Honda Health Plan's Motion, and Honda Retirement Plan's Motion. The court similarly concludes that Ms. Caudle has not alleged any plausible claim against Honda Health Plan.

###### 1.      Count I

The undersigned has already addressed the merits of these same contested issues in a case involving the same lawyers in *Smith*, No. 1:13-CV-2047-VEH, (Doc. 42 at 4-5).[8] Relying upon the undersigned's analysis of comparable allegations in *Smith*, (*see id.* at 5 ("Further, the court agrees with Honda Plan that because Count I lacks any allegation of wrongdoing on its part, Ms. Smith has not stated a plausible claim for ERISA benefits against it in that count.")) as persuasive authority, Honda Health Plan's Motion is **GRANTED** as to Count I because Ms. Caudle omits any assertion of Honda Health Plan's wrongful conduct. Instead, all allegations in Count

---

[7]  Thus, Ms. Caudle concedes that Count III is not applicable to Honda Health Plan.

[8]  *Smith* is fully cited *supra*, at 10.

I challenge the actions of Cigna, exclusively. (*See* Doc. 1 at 21-23 ¶¶ 105-116 (identifying only Cigna as a culpable party for terminating Ms. Caudle's ERISA benefits)).

The court's conclusion that Honda Health Plan is not a proper party to Count I of Ms. Caudle's complaint is further bolstered by the Eleventh Circuit's decision in *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186 (11th Cir. 1997). In *Garren*, the Eleventh Circuit made it clear that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Id.* at 187. Therefore, because the Honda Health Plan is not a plan administrator, Count I is subject to dismissal for this additional reason.

### 2.    Count II

For the reasons set out in the court's above analysis of Ms. Caudle's breach of fiduciary claim in connection with Honda's Motion, Honda Health Plan's Motion is **GRANTED** as to Count II.

### 3.    Count IV

In Count IV, Ms. Caudle seeks "penalties in an amount up to One Hundred Ten Dollars ($110) per day from thirty days after the first request for the materials." (Doc. 1 at 30 ¶ 142)" pursuant to 29 U.S.C. § 1132(c). Honda Health Plan maintains that this penalty-related remedy is not plausibly actionable against it because it is not an

ERISA administrator. *See, e.g., Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270-71 (11th Cir. 2008) ("Finally, ReliaStar was not subject to document withholding penalties, as the statute <u>only permits an award of penalties against the plan administrator</u>, and, as discussed above, the Committee, not ReliaStar, is the Plan administrator.") (emphasis added).

Based upon *Byars* and the other authorities cited by Honda Health Plan, all of which Ms. Caudle has failed to distinguish, the court agrees that ERISA limits liability for improper document withholding to plan administrators. Alternatively, Count IV is subject to dismissal because of its impermissible shotgun format. Accordingly, Honda Health Plan's Motion is **GRANTED** as to Count IV. Further, with no claims remaining against it, Honda Health Plan is **HEREBY DISMISSED WITHOUT PREJUDICE** from Ms. Caudle's lawsuit.

C.   **Honda Retirement Plan's Motion**

Honda Retirement Plan's Motion similarly identifies Counts I, II, and IV as ones which Ms. Caudle is pursuing against Honda Retirement Plan. Ms. Caudle contests the dismissal of Counts I, II, and IV against Honda Retirement Plan[9] as part of her consolidated response to Honda's Motion, Honda Health Plan's Motion, and Honda Retirement Plan's Motion. The court likewise determines, consistent with its

---

[9] Thus, Ms. Caudle concedes that Count III is not applicable to Honda Retirement Plan.

15

analysis of Honda Health Plan's Motion above that, Ms. Caudle has not asserted any plausible claim against Honda Retirement Plan.

Accordingly, Honda Retirement Plan's Motion is **GRANTED**. Further, with no claims remaining against it, Honda Retirement Plan is **HEREBY DISMISSED WITHOUT PREJUDICE** from Ms. Caudle's lawsuit.

### D.   LINA's Partial Motion

LINA's Partial Motion seeks only to dismiss Count II of Ms. Caudle's complaint. Relying upon the court's above analysis of Count II in connection with Honda's Motion, LINA's Partial Motion is **GRANTED** on Ms. Caudle's breach of fiduciary count.

### E.   Cigna's Motion

Cigna maintains that it is due to be dismissed for jurisdictional reasons as well as the absence of any plausibly pleaded claims under Rule 12(b)(6). (*See* Doc. 22 at 1 (seeking a dismissal "based upon the lack of jurisdiction over any subject matter …, the lack of personal jurisdiction . . . , and failure to state a claim upon which relief can be granted.")). In sum, Cigna contends that the appropriate party defendant in this lawsuit is its subsidiary and claims administrator for the Honda Health and Honda

Retirement Plans, LINA,[10] and that Cigna's mere status as a parental holding company of LINA neither subjects it to the jurisdiction of this court nor renders it plausibly liable to Ms. Caudle under ERISA.

### 1.      Rules 12(b)(1) and 12(b)(2)

Turning to the jurisdictional portion of Cigna's Motion first, it is **DENIED**. The court has, earlier in this decision, set forth the appropriate constitutional standard which governs matters of personal jurisdiction in this ERISA dispute. As the Eleventh Circuit has instructed in *BCCI*, the relevant initial inquiry is Cigna's "aggregate contacts with the nation as a whole rather than [its] contacts with the forum state." *BCCI*, 119 F.3d at 947; *see also id.* at 948 ("[D]efendants are large corporations providing banking services to customers in major metropolitan areas along the eastern seaboard [and,] [t]he fact that they may not have had significant contacts with Florida

---

[10]   In its answer, LINA has admitted that it "is the entity responsible for adjudicating and paying claims for benefits under [a group policy number LK-890019 (the "LTD Policy")]." (Doc. 21 ¶ 2); (*see also* Doc. 22-1 (attaching copy of LTD Policy and identifying LINA as the insurer)). In contrast, while the LTD Policy refers to a "Plan Administrator" in its "**GENERAL PROVISIONS**" section, it does not specify who that responsible party is and indicates, by context, that LINA is not the plan administrator. (*See id.* at 18 "The Employer and Plan Administrator are agents of the Associate for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.") (emphasis added)). Consideration of the LTD Policy does not convert any of the Rule 12 motions into Rule 56 ones because Ms. Caudle refers to the LTD Policy in her complaint and its existence is vital to her ERISA benefits claim. (Doc. 1 at 12 ¶ 61); *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.").

is insufficient to render Florida an unreasonably inconvenient forum.").

Additionally, the burden is on Cigna to demonstrate "constitutionally significant inconvenience[.]" *Id.*; *see also id.* ("Because we conclude that the First American defendants have not demonstrated any constitutionally significant inconvenience, we find no infringement of their individual liberty interests protected by the Due Process Clause of the Fifth Amendment."). None of the evidence presented by Cigna conforms to this Fifth Amendment framework. Rather, Cigna offers only proof related to its lack of contacts with Alabama, but this type of evidence is essentially meaningless when the federal statute bestowing this court with federal question jurisdiction contains a nationwide service of process provision, such as ERISA does. *See Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1522-23 (11th Cir. 1987) (recognizing that ERISA's "venue provision can provide broad access to the federal courts" and clarifying that "nationwide service of process is available only if the suit is 'an action under *this subchapter*'" (emphasis in original) (quoting 29 U.S.C. § 1132(e)(2))); *see also* discussion *supra*, at 3-4 n.2.

At a minium, Cigna has failed to acknowledge how the federal question nature of this dispute impacts the court's personal jurisdiction inquiry, including explaining why Cigna's lack of contacts with the forum state should even factor into the analysis when the *BCCI* binding precedent from the Eleventh Circuit under a federal statute

incorporating a comparable nationwide service of process provision holds otherwise. Instead, Cigna continues to mistakenly rely upon the personal jurisdiction standard applicable in diversity cases. (*See, e.g.*, Doc. 32 at 4-5 (quoting *Mercantile Capital, LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247-48 (N.D. Ala. 2002)); *see also Mercantile Capital*, 193 F. Supp. 2d at 1245 ("In this litigation, FTT is pursuing claims under a number of legal theories against various parties, asserting that this Court possesses <u>diversity</u> subject matter jurisdiction under 28 U.S.C. § 1332(a)(1)) (emphasis added).

Additionally, while the undersigned has addressed the merits of similarly contested issues in a case involving the same lawyers in *Smith*, No. 1:13-CV-2047-VEH, (Doc. 42 at 6-9), there, the court utilized a <u>diversity-based</u> personal jurisdiction test under *Madara*. Therefore, that particular portion of the *Smith* opinion decided favorably to Cigna is rejected here.[11]

Finally, while Cigna indicates that it separately disputes the existence of subject matter jurisdiction, the independence of those arguments are ill-defined and really they just morph into its personal jurisdiction ones. Therefore, the court does not

---

[11]   In *Smith*, both sides indicated that the applicable personal jurisdiction standard was connected to Cigna's forum-related contacts with Alabama. In light of this court's reevaluation of the appropriate framework to use in this federal question case, the court disregards its previous personal jurisdiction holding in *Smith*.

see any valid basis for dismissing Cigna from this lawsuit on subject matter jurisdiction grounds. *See, e.g., BCCI*, 119 F.3d at 941 ("When a jurisdictional motion to dismiss depends, as in this case, on the assertion of a right created by a federal statute, the court should dismiss for lack of jurisdiction only if "the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy.'" (quoting *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993))). Accordingly, the jurisdictional part of Cigna's Motion is **DENIED** on account of its underdeveloped and/or misguided nature.

### 2.    Rule 12(b)(6)

However, Cigna's Motion is alternatively **GRANTED** on Rule 12(b)(6) grounds. More specifically, consistent with the court's analysis of the other pending motions above, *see* discussion *supra*, at 13-14, Cigna is not plausibly liable to Ms. Caudle on Counts I and III of her complaint because Cigna did not issue the LTD Policy and did not deny Ms. Caudle's ERISA benefits claim, and ERISA unambiguously limits the scope of liability for those types of violations to plan administrators exclusively.[12]

---

[12]  The court acknowledges that within Count I, Ms. Caudle has perplexingly referred only to Cigna as the party who wrongfully terminated her ERISA benefits. (Doc. 1 at 21-23 ¶¶ 105-116). Ms. Caudle also inexplicably asserts that the LTD Policy was sold and underwritten by Cigna. (*Id.*

To the extent that Ms. Caudle contends that Cigna is jointly and severally liable with LINA on a co-conspirator, vicarious liability, and/or an alter ego basis, she has done so in an implausible and conclusory fashion. (*See* Doc. 1 ¶ 42 (alleging that Cigna "should be held jointly and severally liable for any award of damages under 29 U.S.C. § 1132"); *see also* Doc. 27 at 6 ("Caudle's contention is that Cigna <u>vicariously</u> does business in Alabama using subsidiaries like LINA as proxies.") (emphasis in original)).[13]

Further, while Ms. Caudle has referred to <u>some</u> ERISA-based authorities that have permitted limited jurisdictional discovery from a parent corporation such as Cigna, she has not pointed to <u>any</u> cases that have ultimately allowed a parental holding company to be held jointly and severally <u>liable</u> for the actions of its subsidiary in denying a plaintiff's benefits claim under an ERISA co-conspirator, vicarious liability, and/or alter ego theory. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an

---

at 12 ¶ 61). However, the underlying LTD Policy, which makes no mention of Cigna and instead identifies exclusively LINA as the insurer, belies Ms. Caudle's Cigna-driven allegations.

[13]   All page references to Doc. 27 correspond with the court's CM/ECF numbering system.

issue before the court).

Additionally, no defendant is plausibly liable to Ms. Caudle on Count II because *Varity* forecloses her from pleading the type of breach of fiduciary claim that she has alleged in her complaint. Finally, Count IV simply does not apply to Cigna, but rather only to "Honda entities."

### F.    Discovery Motion

In her Discovery Motion, Ms. Caudle seeks permission to conduct limited jurisdictional discovery directed to Cigna before the court decides the merits of Cigna's Motion. (Doc. 26 at 1). The proposed discovery primarily focuses upon Cigna's corporate relationship with LINA. (*See generally* Doc. 27-1 at 2-3).[14] Because the court has **DENIED** the jurisdictional portion of Cigna's Motion, the jurisdictional discovery sought by Ms. Caudle is unnecessary and her Discovery Motion is therefore **TERMED** as **MOOT**.

## IV.    Conclusion[15]

Accordingly, Honda's Motion, Honda Health Plan's Motion, Honda Retirement

---

[14] All page references to Doc. 27-1 correspond with the court's CM/ECF numbering system.

[15] The court notes that, on May 2, 2014, Ms. Caudle filed a Notice of Request for Oral Argument (Doc. 19) (the "Notice") and, on May 19, 2014, filed a second Notice of Request for Oral Argument (Doc. 29) (the "Second Notice") that Cigna has expressly opposed. (Doc. 32 at 3 n.1). Due to the straightforward nature of the disputed issues presented by the parties, the court sees no need for oral argument and, the Notice and Second Notice are **DENIED**.

Plan's Motion, and LINA's Partial Motion are all **GRANTED**, Cigna's Motion is **GRANTED** on Rule 12(b)(6) grounds, but is otherwise **DENIED**, and Ms. Caudle's Discovery Motion is **TERMED** as **MOOT**. Further, Ms. Caudle is **HEREBY ORDERED**, no later than July 21, 2014, to replead her complaint in a non-shotgun, non-conclusory, and otherwise plausible format that is consistent with the foregoing rulings.

   **DONE** and **ORDERED** this the 27th day of June, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23